CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 28, 2024

LAURA A. AUSTIN, CLERK
BY: _____
/s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHARLES CARTER, | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-cv-00502 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| LIEUTENANT MICHAEL WILLIAMS, *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Charles Carter is an inmate in the custody of the Virginia Department of Corrections (VDOC) pursuant to an Interstate Corrections Compact (ICC) agreement between the Commonwealth of Virginia and the State of Wyoming. Proceeding *pro se*, Carter filed this civil action under 42 U.S.C. § 1983 against more than 30 defendants, including the VDOC; the Commonwealth of Virginia; correctional officers and supervisory officials employed by the VDOC; members of the medical staff at Red Onion State Prison (Red Onion), where Carter remains incarcerated; and Carl Voigstberger, a classification and housing manager for the Wyoming Department of Corrections who has not been served with process.

The operative complaint, which includes the initial complaint and a supplemental complaint (collectively, the complaint) consists of 106 handwritten pages, along with more than 150 pages of exhibits, and lists 38 numbered claims, some of which have multiple subparts. (*See generally* Compl., ECF No. 1; Supp'l Compl., ECF No. 11.) Carter seeks relief for alleged violations of his federal and state constitutional rights, as well as for alleged violations of other federal and state laws. Many of Carter's claims arise from events that occurred on April 22, 2022, when correctional officers used force against him and placed him in ambulatory restraints. Carter also asserts claims based on prior and subsequent events at Red Onion.

Pending before the court are a motion to sever and dismiss filed by the VDOC, the Commonwealth of Virginia, and 30 individual defendants employed by the VDOC (collectively, the VDOC Defendants[1]) (Dkt. No. 36) and a motion to sever and dismiss filed by Nurse Jessee, Nurse Yates, Nurse Practitioner Jessee, Nurse Bise, Dr. Fox,[2] and Nurse Trent (collectively, the Medical Defendants) (Dkt. No. 40).  Both sets of defendants argue that Carter's claims should be severed into separate actions and that certain claims should be dismissed for failure to state a claim upon which relief can be granted.  Carter has filed a response in opposition to the motion. (Dkt. No. 45.)  He also has filed a motion to expedite the proceedings to prevent irreparable harm or, in the alternative, for entry of an order prohibiting defendants from retaliating against him. (Dkt. No. 46.)  Additionally, Carter has filed a motion requesting that further efforts be made to accomplish service of process on defendant Voigstberger.  (Dkt. No. 47.)

For the reasons set forth herein, the court will grant the motions filed by the VDOC Defendants and the Medical Defendants, deny Carter's motions, and dismiss the claims against defendant Voigstberger, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

## I.  SEVERANCE

Having reviewed the complaint, the court concludes that it contains misjoined claims and

---

[1] In addition to the VDOC and the Commonwealth of Virginia, the VDOC Defendants include: Lieutenant Michael Williams, Unit Manager Larry Ross Collins, Captain Still, Captain Gilbert, Investigator Shirks, Investigator D. Stanley, Investigator Bentley, Sergeant Taylor, Sergeant J. Massengill, Sergeant Dutton, Correctional Officer A. Castle, Correctional Officer A. Adams, Correctional Officer Fox, Correctional Officer Neese, Correctional Officer J. Barnett (initially identified as a John Doe defendant), Warden Rick White, ICC Coordinator Kyle Rosch, Grievance Officer Trapp, Grievance Officer Meade, Chief of Operations A. David Robinson, Hearing Officer J. Adams, Counselor R. Kegley, Institutional Program Manager Sykes, Director Harold Clarke, Hearing Officer Kelly Ramey, Counselor M. Martin, Robert Bivens, Correctional Officer Oh, Health Services Director Stephen Herrick, and Assistant Warden J. Blevins.  Although Carter identified two additional John Doe defendants as Correctional Officer J. Boyd and Correctional Officer D. Mullins, he voluntarily dismissed his claims against those two defendants.  (*See* Dkt. No. 35.)

[2] Dr. Fox is identified in the complaint as Nurse Practitioner Fox.

defendants.  *See* Fed. R. Civ. P. 18, 20.  A plaintiff may only join different defendants in the same suit if the claims against them arose out of the same transaction or occurrence, or series thereof, and contain a question of fact or law common to all defendants.  Fed. R. Civ. P. 20(a)(2).  "Thus, where claims arise out of different transactions and do not involve all defendants, joinder of the claims in one lawsuit is improper."  *Ofori v. Fleming*, 7:23-cv-00398, 2024 WL 113766, at *1 (W.D. Va. Jan. 29, 2024).[3]

Even if there were no misjoinder, however, the court concludes that allowing all of Carter's claims to proceed in a single suit would make that lawsuit unwieldy and inefficient and would effectively allow Carter to challenge many aspects of his incarceration and unrelated actions by various defendants in a single omnibus suit, in violation of the Prison Litigation Reform Act.  Moreover Rule 21 of the Federal Rules of Civil Procedure allows a court the discretion to "sever any claim against a party" and proceed with it separately.  Fed. R. Civ. P. 21; *see also Rise v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) ("It is within the district court's broad discretion whether to sever a claim under Rule 21."); *Spencer, White & Prentis, Inc. of Conn. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) ("Justification for severance is not confined to misjoinder of parties.").  Use of Rule 21 has been approved by circuit courts in the context of prisoner complaints, with and without misjoinder.  *See Daker v. Head*, 730 F. App'x 765, 768 (11th Cir. 2018) (explaining that district court should have severed unrelated claims under Rule 21 and *sua sponte* dismissed improper defendants rather than dismissing prisoner's amended complaint); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (holding that district court should have severed case into separate actions or dismissed improperly joined defendants).

---

[3] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted.

Here, the complaint is so far-reaching and contains so many different claims based on different events against different defendants that it simply would not be efficient or otherwise appropriate to prosecute all of Carter's claims in a single case. *See Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007) (noting that, in determining whether severance is proper, courts may consider whether the issues to be severed are significantly different from one another, whether the issues will require different witnesses or different documentary proof, and whether severance or non-severance would prejudice any party).

Accordingly, the court will exercise its discretion to sever Carter's claims into separate lawsuits, still grouping together like claims or claims arising from events that occurred on the same date, in order to promote judicial efficiency and ensure that the claims can be addressed in an orderly fashion.  To the extent that the VDOC Defendants and the Medical Defendants have requested severance, their motions will be granted.  Along with a copy of this memorandum opinion and order, Carter's complaint (Dkt. Nos. 1, 11) shall be filed as the opening document in each of the new lawsuits.  The new lawsuits will be conditionally filed, and Carter must prepay the full filing fee or file an application to proceed *in forma pauperis* for each new action.

## II.  DISMISSAL OF CLAIMS

Before severing the case, however, the court will address the claims that the VDOC Defendants and the Medical Defendants have moved to dismiss for failure to state a claim under Rule 12(b)(6).  For the reasons set forth below, the court concludes that Claims 14, 15, 18, 19, 20, 21, 22, 25, 26, 27, 28, 31, 34, 37, and 38 fail to state a claim upon which relief may be granted.  The court also concludes that the second part of Claim 12 fails to state a claim, that Claim 32 fails to state a claim against Voigstberger, and that any other claims asserted against the VDOC or the Commonwealth of Virginia must be dismissed.  Accordingly, the court will

grant defendants' motions and dismiss the claims against Voigstberger pursuant to 28 U.S.C. § 1915A(b)(1).

## A.  Standard of Review

Rule 12(b)(6) allows defendants to move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Similarly, when a prisoner files a civil action seeking redress from governmental entities or employees, the court may sua sponte dismiss any portion of the complaint that "fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915A(b).  The same standard that governs motions to dismiss under Rule 12(b)(6) governs sua sponte dismissals under § 1915A(b)(1).  *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003).

To withstand dismissal for failure to state a claim, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To satisfy this requirement, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating the sufficiency of a complaint, the court must "construe the allegations and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."  *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023).  "However, [the court] need not accept as true legal conclusions drawn from the facts or any other unwarranted deductions, unreasonable conclusions, or arguments."  *Id.*  *Pro se* complaints are given a liberal construction.  *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th 2006).  Nonetheless, a complaint filed by a *pro se* plaintiff "must still state a claim to relief that is plausible on its face."  *Sakyi v. Nationstar Mortg., LLC*, 770 F. App'x 113, 113 (4th Cir. 2019).

**B.  Claims Against the VDOC and the Commonwealth of Virginia**

Carter names the VDOC and the Commonwealth of Virginia as defendants in several claims asserted in the complaint under 42 U.S.C. § 1983 and state law.  The complaint also includes two claims asserted only against the VDOC and the Commonwealth.  In Claim 20, titled "Eleventh Amendment Immunities," Carter does not assert any separate grounds for relief but instead argues that the VDOC and the Commonwealth "waived their immunity rights" by entering into an ICC contract with the State of Wyoming.  (Compl. 83.)  In Claim 28, titled "Proprietary Functions," Carter alleges that the VDOC's "inadequate housing unit facilities" are "unconstitutional" and "grossly negligen[t] under state law."  (Compl. 86.)

The claims against the VDOC and the Commonwealth will be dismissed for two reasons. First, neither defendant is a "person" subject to liability under § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Va. Office for Prot. & Advocacy v. Reinhard,* 405 F.3d 185, 189 (4th Cir. 2005) (agreeing that a state agency is "not a 'person' within the meaning of [§ 1983]").

Second, the Eleventh Amendment of the United States Constitution bars Carter's claims under § 1983 and state law against the VDOC and the Commonwealth.  Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  This immunity extends to "state agencies" and other "arms of the state," such as the VDOC.  *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996).  Unless a State's Eleventh Amendment immunity has been waived or abrogated, any claim against a State or a state agency is "barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf &*

*Eddy, Inc.*, 506 U.S. 139, 146 (1993).  This includes pendent claims under state law.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984); *see also Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002) (holding that a district court's ability to exercise supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367(a) "does not extend to claims against nonconsenting state defendants").

Carter does not plausibly allege that the immunity afforded by the Eleventh Amendment has been waived by the Commonwealth.  The Supreme Court's "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011).  "A State's consent to suit must be unequivocally expressed in the text of the relevant statute." *Id.*  In other words, waiver cannot be found unless a provision includes a "clear declaration by the State . . . that the State in fact consents to suit" in federal court. *Id.* "Waiver may not be implied." *Id.*

Carter does not cite to any statutory language expressing the Commonwealth's intent to waive its immunity under the Eleventh Amendment.  Contrary to his assertions, the applicable ICC statute, Virginia Code § 53.1-216, does not waive the Commonwealth's immunity to suit in federal court. *See Ali v. District of Columbia*, 278 F.3d 1, 6–7 (D.C. Cir. 2002) (finding "no basis" in the Virginia statute to support the conclusion that the Commonwealth intended to waive its immunity).  Likewise, the Virginia Tort Claims Act only "waive[s] sovereign immunity for tort claims filed in state courts" and "does not waive the state's eleventh amendment immunity" in federal court. *McDonnell v. Adams*, 829 F.2d 1319, 1329 (4th Cir. 1987); *see also Sossamon*, 563 U.S. at 285 (explaining that a waiver of sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign" and, thus, that "a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court").  Finally, the immunity

afforded by the Eleventh Amendment has not been abrogated with respect to any claims under § 1983. "While Congress may abrogate a State's Eleventh Amendment immunity by express statutory language, it has long been settled that 42 U.S.C. § 1983 . . . does not effect such an abrogation." *In re Sec'y of Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1149 (4th Cir. 1993). For these reasons, the court will dismiss the claims asserted against the VDOC and the Commonwealth of Virginia, including Claims 20 and 28.

### C.  The Second Part of Claim 12 and All of Claim 14

In the second part of Claim 12, Carter seeks to hold defendants White, Bentley, Bivens, Rosch, Voigstberger, Clarke, Collins, and Gilbert liable under § 1983 for "failing to investigate or provide any corrective actions upon notice by either incident report, letters, grievances, or verbal notification." (Compl. 75.) Similarly, in Claim 14, Carter seeks to hold defendants Rosch, Clarke, White, and Voigstberger liable under § 1983 for failing to "investigate [his written] complaints of harassment, threats, and assaults." (*Id.* at 77.) Carter also alleges that Rosch violated his federal constitutional rights by failing to investigate a "criminal complaint" that Carter filed against prison staff. (*Id.*) For the following reasons, the court concludes that Carter's allegations fail to state a claim for relief under § 1983.

To the extent that Carter seeks to hold the named defendants liable in their supervisory capacities for failing to investigate or discipline correctional officers for the uses of force or other misconduct alleged in the complaint, Carter has no viable claim against defendants under § 1983. As the Supreme Court has explained, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also id.* at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

violated the Constitution.").  A supervisor's "mere knowledge" that subordinate employees have engaged in unconstitutional conduct does not provide a basis for liability under § 1983.  *King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 677); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in [constitutional] violations are responsible . . . . Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.  A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

Additionally, it is well settled that "[n]o citizen has an enforceable right to institute a criminal prosecution."  *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) (citing *Linda R. S. v. Richard V.*, 410 U.S. 614, 619 (1973)).  While inmates have a constitutional right to access the courts, "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement [through a civil lawsuit]."  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  The right does not impose an obligation to assist an inmate in pursuing criminal charges.  *Lopez*, 914 F.2d at 494.  Thus, Rosch's alleged failure to investigate a criminal complaint does not give rise to a federal constitutional claim.

Finally, Carter's allegations are insufficient to satisfy the three-factor test for supervisory liability set forth in *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  "That test asks (1) whether 'the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury'; (2) whether 'the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) whether 'there was an

affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Younger v. Crowder*, 79 F.4th 373, 384 (4th Cir. 2023) (quoting *Shaw*, 13 F.3d at 799). To satisfy the first element, a plaintiff must show that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkinson v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014). "As to the second element, a plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799.

Carter's complaint does not contain sufficient facts to support each of these elements. His conclusory allegations of supervisory liability fail to state a cognizable claim for relief under § 1983. *See Hoffman v. Office of the State Att'y*, 793 F. App'x 945, 954 (11th Cir. 2019) ("Because the plaintiffs' claims of supervisory liability are supported by conclusory allegations, the complaint does not contain sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). For all of these reasons, the second part of Claim 12 and all of Claim 14 will be dismissed.

**D.  Claim 15**

In Claim 15, titled "Unlawful Disciplinary Actions," Carter claims that various defendants deprived him of due process in connection with disciplinary charges that he received in 2022. (Compl. 78.) Carter alleges that he was convicted of the charged offenses and that he received the following penalties: (1) loss of phone privileges for 60 days for the offense of aggravated assault (*id.* at 39); (2) loss of electronic devices for 30 days for the offense of

threatening bodily harm (*id.* at 44); (3) an $8 fine for the offense of disobeying an order (*id.* at 43); (4) a $13 fine for the offense of making a false statement in relation to a complaint filed pursuant to the Prison Rape Elimination Enforcement Act (PREA) (*id.* at 61); and (5) loss of accumulated good-time credits for the offense of threatening to kill another person (*id.* at 40).

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law."  *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).  A plaintiff who fails to establish the existence of a protected interest "cannot invoke the procedural protections of the Due Process Clause."  *Id.*

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), "the Supreme Court recognized that constitutional due process protections extend to prison disciplinary proceedings that could adversely impact an inmate's liberty interests—such as the loss of good time credits," *Lennear v. Wilson*, 937 F.3d 257, 268 (4th Cir. 2019).  "The Supreme Court held that in a disciplinary proceeding in which an inmate's liberty interests are at stake, government officials must provide the inmate with written notice of the charges at least 24 hours before the hearing as well as a written report after the hearing detailing the evidence relied upon and the reasons for the disciplinary action."  *Id.*  The Court "further recognized that, in such proceedings, an inmate has a qualified right to call witnesses and present documentary evidence in his defense."  *Id.*  Importantly, however, the procedural protections afforded by *Wolff* "apply only when a prisoner's constitutional interests are implicated."  *David v. Derosa*, 176 F. App'x 258, 259 (3d Cir. 2006) (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995)); *see also Wolff*, 418 U.S. at 571

11

n.19 ("We do not suggest . . . that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges.").

In *Sandin v. Conner*, the Supreme Court held that a prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless it inflicts "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "inevitably affect[s] the duration of his sentence."  515 U.S. at 484, 487.  Although *Sandin* specifically addressed whether an inmate's assignment to segregated confinement implicated a protected liberty interest, *id.* at 485–87, many courts, including this one, have applied *Sandin*'s "atypical and significant hardship" test in determining whether a monetary fine implicates a protected interest in the prison disciplinary context.  As several judges of this court have recognized, "small monetary penalties and penalties that do not impose restraint do not impose atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life and are not constitutionally protected interests under the Due Process Clause." *Roscoe v. Mullins*, No. 7:18-cv-00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment in defendants' favor on a due process claim where the only penalty imposed was a $15 penalty), *aff'd on other grounds*, 828 Fed. Appx. 921 (4th Cir. 2020); *Ferguson v. Messer*, No. 7:15-cv-00140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30, 2017) (concluding that three $12 fines did not give rise to a protected property interest); *Bratcher v. Mathena*, No. 7:15-cv-00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding that a $12 fine did not pose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life and therefore did not constitute the loss of a protected interest).  *But see Bowling v. Clarke*, No. 7:19-cv-00453, 2021 WL 440794, at *5 (W.D. Va. Feb. 8, 2021) (reaffirming an

earlier ruling that a $15 fine triggered due process protections, but concluding that defendants were entitled to qualified immunity on this issue).

Like the plaintiffs in *Roscoe*, *Ferguson*, and *Bratcher*, Carter was subjected only to a small fine as a result of two of the challenged disciplinary proceedings, a penalty that is insufficient to give rise to a protected liberty or property interest under the rationale of *Sandin*.[4] Because the court concludes that the imposed fines did not inflict an atypical and significant hardship on Carter in comparison to the ordinary incidents of prison life, *Sandin*, 515 U.S. at 484, they did not trigger due process protections and any due process claims based on those particular proceedings fail to state a claim upon which relief may be granted.[5]

The court reaches the same decision with respect to the disciplinary proceedings that resulted in the temporary loss of phone privileges and access to electronic devices. The temporary denial of privileges is a "matter[] which every prisoner can anticipate [is] contemplated by his original sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir.

---

[4] Although the Fourth Circuit has not yet spoken directly on this issue in a published decision, some courts have questioned whether *Sandin*'s analysis—requiring that the particular hardship be "atypical and significant" to create a constitutionally protected interest—applies in the context of property deprivations, given that *Sandin* addressed whether a particular deprivation implicated a liberty interest. *See Anderson v. Dillman*, 824 S.E.2d 481, 483–84 (Va. 2019) (noting the disagreement among federal courts on this issue and discussing the different rationales underlying the decisions). Cases from the Sixth and Tenth Circuits have applied *Sandin* in the context of property rights, while the Third and Fifth Circuits have stated that *Sandin* does not control in a case involving a property interest. *Anderson*, 824 S.E.2d at 483 & n.4 (collecting authority); *see also Steffey v. Orman*, 461 F.3d 1218, 1222 n.3 (10th Cir. 2006) (identifying the Second and Fifth Circuits as holding that *Sandin* applies only to liberty interests and the Sixth and Ninth Circuits as suggesting, but not holding, the same). The Fourth Circuit indicated, albeit in an unpublished decision, that *Sandin* is applicable to property interests when it applied *Sandin* to conclude that a prisoner "did not have a constitutionally protected liberty or property interest in his prison job." *Backus v. Ward*, 151 F.3d 1028, 1998 WL 372377, at *1 (4th Cir. 1998) (unpublished); *but cf. Burks v. Pate*, 119 F. App'x 447, 450-51 (4th Cir. 2005) (relying on a since-overruled Tenth Circuit case for the proposition that a prisoner has a protected property interest in his prison account funds and concluding that defendants' removal of $249 from plaintiff's account to pay his hospital bill triggered due process protections).

[5] To the extent that Carter also attempts to assert an Eighth Amendment claim based on the fines or other penalties he received for disciplinary offenses, that claim also fails because Carter does not plausibly allege that the penalties posed a "substantial risk of serious harm," *De'Lonta*, 330 F.3d at 634, or that the defendants responsible for imposing the penalties "actually kn[ew] of and disregard[ed] an excessive risk to [his] health or safety," *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

1990).  It does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  Consequently, the temporary denial of access to the phone and electronic devices did not trigger the protections of the Due Process Clause.  *See Allen v. Mayo*, No. 1:20-cv-00780, 2021 WL 1753948, at *5 (E.D. Va. May 4, 2021) ("Neither a loss of telephone privileges nor visitation involve a recognized liberty interest."), *aff'd*, No. 21-6822, 2021 U.S. App. LEXIS 35298, 2021 WL 5585751 (4th Cir. Nov. 30, 2021); *Campbell v. Leslie*, No. 5:18-cv-00357, 2019 WL 2895295, at *8 (S.D.W. Va. June 10, 2019) (collecting authority for the proposition that a loss of privileges, such as a loss of e-mail, telephone, visitation, commissary, and recreational privileges, does not implicate protected liberty interests under *Sandin*), *report and recommendation adopted*, No. 5:18-cv-00357, 2019 WL 2881539 (S.D.W. Va. July 3, 2019).

This leaves the portion of Claim 15 that challenges the validity of the disciplinary conviction that resulted in the loss of accumulated good-time credits.  Although the loss of good-time credits *does* implicate a protected liberty interest since it affects the duration of a prisoner's sentence, Carter's claim challenging the loss of good-time credits is not cognizable under § 1983. "The Supreme Court has long held that 'habeas corpus is the appropriate remedy for state prisoner attacking the validity of the fact or length of their confinement' and that this 'specific determination must override the general terms of § 1983.'"  *Moskos v. Hardee*, 24 F.4th 289, 295 (4th Cir. 2022) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973)).  Because "disciplinary convictions resulting in the loss of good-time credits" fall within the "core of habeas corpus," they may not be challenged in a § 1983 suit "unless the plaintiff can demonstrate that the conviction or sentence already has been invalidated, whether on direct appeal, by executive order, by a state tribunal, or by a federal court's issuance of a writ of habeas corpus."  *Id.*; *see*

*also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (concluding that a state prisoner's "claim for declaratory relief and monetary damages, based on allegations of deceit and bias on the part of the [disciplinary] decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"). Carter does not allege that the disciplinary conviction resulting in the loss of good-time credits has been invalidated. Because his due process challenge under § 1983 "necessarily impl[ies] the invalidity of the punishment imposed," the § 1983 claim "must be dismissed." *Moskos*, 24 F.4th at 296.

### E. Claim 18

In Claim 18(a), Carter asserts that defendants Shirks and Stanley violated PREA by failing to properly investigate a PREA complaint that Carter filed against other defendants. In Claim 18(b), Carter alleges that Shirks and Stanley engaged in "obstruction of justice" by failing to take photos of his injuries. (Compl. 81–82.) Both allegations fail to state a claim upon which relief may be granted.

As numerous courts have concluded, "PREA does not create a private cause of action" enforceable under § 1983. *Bracy v. Tully*, No. 1:22-cv-00827, 2022 WL 3229325, at *3 (E.D. Va. Aug. 10, 2022) (collecting cases). To the extent that Claim 18 "rests on an alleged failure to investigate [a] PREA complaint, that claim also fails." *Id.* (collecting cases). Likewise, to the extent that Carter claims to have needed photographs of his alleged injuries to pursue a criminal complaint or a civil rights action, he fails to state a claim upon which relief may be granted. As a private citizen, Carter "lacks a judicially cognizable interest in the prosecution or nonprosecution of another," *Linda R. S.*, 410 U.S. at 619, and he does not allege that the lack of access to photographs "impeded" his ability to pursue "a nonfrivolous legal claim," *Lewis*, 518 U.S. at 353; *see also Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (holding that an actionable

claim for denial of access to the courts requires "an actual injury resulting from official conduct").  Accordingly, Claim 18 will be dismissed.

### F.  Claim 19

In Claim 19, Carter asserts that defendants Rosch, Collins, and Voigstberger denied his request for an interstate transfer without providing due process.  (Compl. 82–83.)  It is well settled that a prisoner has no constitutionally protected interest in being housed in a particular state or facility.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State.").  In the absence of a protected interest, Carter has no viable claim for violation of his right to due process.  Consequently, Claim 19 will be dismissed.

### G.  Claim 21

In Claim 21, Carter alleges that defendants Trapp and Meade obstructed his ability to access the VDOC grievance procedure, in violation of his federal and state constitutional rights.  (Compl. 83–84.)  This claim also fails since "inmates have no constitutional entitlement or due process interest in access to a grievance procedure."  *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see also Vlaming v. West Point Sch. Bd.*, 480 F. Supp. 3d 711, 720 (E.D. Va. 2020) ("The free speech and due process clauses under the Virginia Constitution are coextensive with the U.S. Constitution.").  Because the alleged failure to process Carter's grievances is not independently actionable under § 1983 or state law, Claim 21 will be dismissed.

### H.  Claim 22

In Claim 22, Carter alleges that defendants Massengill, Barnett, Castle, Oh, Williams,

16

White, J. Adams, Gilbert, and Still obstructed justice in violation of Virginia criminal law by blocking the view of a handheld camera used on April 22, 2022, while Carter was being placed in restraints.  A plaintiff generally cannot pursue a civil claim based on a violation of a criminal statute unless the statute itself creates a private right of action.  *See Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000) ("The Supreme Court historically has been loath to infer a private right of action from a bare criminal statute.").  Because Carter does not identify any particular statute as the basis for his claim, let alone one that creates of private right of action, Claim 22 will be dismissed.

**I.  Claim 25**

In Claim 25, Carter alleges that defendants Collins, Gilbert, Castle, and Stanley violated federal and state law by possessing chewing tobacco on state property.  He further alleges that the officers' actions violated his Fourteenth Amendment right to due process.  (Compl. 85.) These allegations fail to state a claim upon which relief may be granted.

Carter does not cite to any particular federal or state law that prohibits the of use tobacco products on state property, much less a federal or state law that is privately enforceable through a civil action.  *Broderick*, 225 F.3d at 447; *see also Cherrie v. Va. Health Servs.*, 787 S.E.2d 855, 858 (Va. 2016) (emphasizing that the state appellate court "would never infer a private right of action based solely on a bare allegation of a statutory violation").  Nor does Carter plausibly allege that the sight or smell of chewing tobacco imposes the type of atypical and significant hardship that would give rise to a liberty interest protected by the Due Process Clause.  *Sandin*, 515 U.S. at 484.  Therefore, Claim 25 will be dismissed.

17

**J.  Claim 26**

In Claim 26, Carter asserts a claim for "slavery" in violation of the Ninth, Thirteenth, and Fourteenth Amendments.  Carter alleges that he is a "Black man" and that defendant Collins once claimed to be a "Grand Wizard" and referred to Carter as his "property."  (Compl. 85.)

Carter's allegations, while troubling, fail to state a claim for at least three reasons.  First, "the Ninth Amendment does not independently provide a source of individual constitutional rights." *Perry v. Lackawanna Cnty. Children & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009).  Second, Carter does not allege that Collins subjected him to involuntary servitude or forced labor in violation of Thirteenth Amendment.  *See Risley v. Hawk*, 918 F. Supp. 18, 22 (D.C. Dist. 1996) (dismissing a Thirteenth Amendment claim where the inmate did not allege that the defendants actually subjected him to slavery).  Finally, "[m]ere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." *Hensley v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005).  Thus, Claim 26 will be dismissed.

**K.  Claim 27**

In Claim 27, Carter asserts that defendants Ramey and J. Adams violated a Wyoming statute by deducting fines from his spending account.  (Compl. 86.)  The statute on which Carter relies merely directs the Wyoming Department of Corrections to "adopt rules and regulations to establish a system for punishing prisoner misconduct through the imposition of fines to be deducted from compensation earned as provided by [Wyoming Statute] 7-16-203."  Wyo. Stat. § 7-16-204.  The statute does not prohibit correctional officials from collecting fines from inmates who do not have a job or create a private right of action against correctional officials for doing so.  Moreover, "a violation of a state statute alone is not cognizable under § 1983" since § 1983 only provides "a remedy for violations of federal statutory and constitutional rights."

*Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005).  Consequently, Claim 27 will be dismissed.

### L.  Claim 31

Claim 31 is a catch-all claim in which Carter seeks relief for "[a]ny and all claims, causes, and arguments not specifically and/or artfully raised in [the] complaint."  Compl. 87. Because this claim plainly fails to give the defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002), it will be dismissed.

### M.  Claim 32 Against Voigstberger

As part of Claim 32, Carter alleges that multiple defendants, including Voigstberger, "violated [his] Eighth Amendment right to be free from deliberate indifference to [his] safety, health and wellbeing resulting in lasting physical pain."  (Supp'l Compl. 11.)  As noted above, Voigstberger is a classification and housing manager with the Wyoming Department of Corrections.  Because Carter does not allege facts plausibly suggesting that this out-of-state defendant was personally responsible the alleged violations of his Eighth Amendment rights, Claim 32 will be dismissed.  *See Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023) ("The Supreme Court has made clear that to state a plausible [§ 1983] claim, a plaintiff must plead that *each* Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) ("To establish personal liability under § 1983, . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights.  That is, the official's own individual actions must have violated the Constitution.  Importantly, mere knowledge of such a deprivation does not suffice.").

**N.  Claim 34**

Claim 34 is titled "state tort misrepresentation prohibited."  Carter alleges that certain defendants made false statements or misrepresentations in violation of Virginia Code § 18.2-498.3, thereby depriving him of his rights under the Fourteenth Amendment.  (Supp'l Compl. 12.)  The statute on which Carter relies is a criminal statute that does not provide for a private right of action, *see Monk v. Va. Dep't of Transp.*, 34 Va. Cir. 374, 377 (Russell Cnty. Cir. Ct. 1994), and "[t]he mere violation of state law, without more, does not amount to a deprivation of due process in violation of the Fourteenth Amendment," *Isom v. Lockhart*, 847 F.2d 484, 486 (8th Cir. 1988).  Therefore, Claim 34 will be dismissed.

**O.  Claim 37**[6]

Claim 37 asserts a claim for breach of contract against defendant Rosch based on alleged violations of the ICC agreement between the Commonwealth of Virginia and the State of Wyoming.  A Virginia statute sets forth the provisions that must be included in any ICC contract between the Commonwealth of Virginia and "any other state."  Va. Code Ann. § 53.1-216. Because the statute indicates that the states are the real parties in interest to an ICC contract, and since Carter does not allege that Rosch personally signed the agreement at issue, Claim 37 will be dismissed.  *See Clark v. New Mexico Dep't of Corr.*, 58 F. App'x 789, 791 (10th Cir. 2023) (concluding that the states were the real parties in interest to an ICC agreement and that any claim for breach of contract was barred by the Eleventh Amendment, even though the plaintiff apparently tried to avoid the Eleventh Amendment by suing [correctional] officials in their official capacities").

---

[6] The supplemental complaint includes two consecutive claims numbered 36.  The court has renumbered the final two claims as Claims 37 and 38.

**P. Claim 38**

In Claim 38, Carter asserts a claim of intentional infliction of emotional distress against the Medical Defendants, based on their alleged failure to adequately treat the hearing impairment that purportedly resulted from the use of force on April 22, 2022.  (Supp'l Compl. 13.)  To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts sufficient to show: (1) that "the wrongdoer's conduct was intentional or reckless"; (2) that "the conduct was outrageous or intolerable"; (3) that "there was a causal connection between the wrongdoer's conduct and the resulting emotional distress"; and (4) that "the resulting emotional distress was severe." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008).  With regard to the second element, mere tortious or even criminal conduct is insufficient.  *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991).  Instead, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*  The conduct alleged by Carter does not meet this stringent standard.  *See Ogunde v. Prison Health Servs.*, 645 S.E.2d 520, 526–27 (Va. 2007) (concluding that an inmate's claim of intentional infliction of emotional distress was properly dismissed since the alleged failure to provide appropriate medical treatment for the inmate's skin condition was not "so intolerable or outrageous such that it offend[ed] against the generally accepted standards of decency and morality").  Consequently, Claim 38 will be dismissed.

### III.  PLAINTIFF'S MOTIONS

The court turns now to the motions filed by Carter.  Because the complaint fails to state a claim against Voigstberger, Carter's motion requesting that additional efforts be made to accomplish service of process on this out-of-state defendant (Dkt. No. 47) will be denied.  The

court will also deny Carter's motion to expedite the proceedings to prevent irreparable harm or, in the alternative, for entry of an order prohibiting the defendants from retaliating against him for filing this action (Dkt. No. 46).  In that motion, Carter complains about events that allegedly occurred months after the instant action was filed.  Because the motion is based on new assertions of mistreatment that are entirely different from the claims that will be allowed to proceed in this particular action, they do not provide a basis for the type of preliminary injunctive relief requested by Carter.  *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits.  Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."); *Omega World Travel v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action.").

## IV.  CONCLUSION AND ORDER

For the reasons set forth above, it is hereby ORDERED as follows:

1.   The motions to sever and dismiss filed by the VDOC Defendants and the Medical Defendants (Dkt. Nos. 36, 40) are GRANTED.

2.  The following claims are DISMISSED for failure to state a claim upon which relief can be granted: the second part of Claim 12; Claims 14, 15, 18, 19, 20, 21, 22, 25, 26, 27, 28, 31, 34, 37, and 38; Claim 32 against Voigstberger; and any other claims asserted against the VDOC or the Commonwealth of Virginia.  Any § 1983 claims asserted against the

VDOC or the Commonwealth of Virginia are dismissed with prejudice; all other claims listed in this paragraph are dismissed without prejudice.

3. The remaining claims (including the remaining portions of Claims 12 and 32) are hereby SEVERED into separate civil actions for all future proceedings, as described below.

4. The present case, 7:22-cv-00502, shall include the following claims arising from events that occurred on April 22, 2022: Claim 1, which alleges that defendants acted with deliberate indifference to Carter's health or safety by applying a spit mask that prevented him from breathing; Claim 2, which alleges that defendants used excessive force against Carter by slamming him onto the floor and holding him there; Claim 3, which alleges that defendants stripped off Carter's clothes and exposed his buttocks to other inmates; Claim 4, which alleges that defendants used excessive force in placing Carter in ambulatory restraints; Claim 5, which alleges that defendants acted with deliberate indifference to Carter's health or safety by forcing him to kneel in an unsanitary cell while he had open wounds on his knees; the portion of Claim 6 in which Carter alleges that his conditions of confinement while in ambulatory restraints violated the Eighth Amendment; Claims 7, 8, 32, 33, 35, and 36, which assert claims of deliberate indifference, medical malpractice, and/or negligence based on the alleged failure to provide adequate treatment for the injuries Carter received on April 22, 2022; Claim 11, which alleges that defendants violated his rights under the Fourteenth Amendment by subjecting him to ambulatory restraints without due process; and Claim 29, which alleges that defendants committed assault and battery.  This action shall proceed against the following defendants: Williams, Taylor, Barnett, Massengill, Oh, Castle, Collins, Neece, Correctional Officer Fox, Still, Gilbert, Bivens, White, Rosch, Clarke, Herrick, Nurse Jessee, Nurse Yates, Nurse

Practitioner Jessee, Nurse Bise, Dr. Fox, and Nurse Trent.  The Clerk will terminate all other defendants as parties to this action.

5. The Clerk is DIRECTED to conditionally file a copy of Carter's complaint (Dkt. Nos. 1, 11) in a new and separate civil action that shall include only the following claims: the portion of Claim 6 in which Carter alleges that defendants prevented him from properly observing Ramadan, in violation of the First Amendment and the Religious Freedom Restoration Act; Claims 9 and 10, and the first part of Claim 12, which assert federal constitutional claims stemming from the seizure of Carter's property; and Claim 17, which asserts federal constitutional claims stemming from the denial of religious materials and Carter's inability to observe Ramadan.  This action shall proceed against the following defendants: Williams, White, Still, Collins, Taylor, Oh, Gilbert, Castle, Neece, Barnett, A. Adams, Dutton, Bivens, Rosch, Bentley, and Sykes.

6. The Clerk is DIRECTED to conditionally file a copy of Carter's complaint (Dkt. Nos. 1, 11) in a new and separate civil action that shall include only the claims of retaliation asserted in Claims 13 and 24.  The new civil action shall be against the following defendants: Gilbert, Collins, Williams, Castle, Massengill, Shirks, Stanley, White, Bivens, Rosch, and Taylor.

7. The Clerk is DIRECTED to conditionally file a copy of Carter's complaint (Dkt Nos. 1, 11) in a new and separate civil action that shall include only Claim 16, which asserts federal constitutional claims stemming from Carter's long-term confinement in administrative segregation at Red Onion.  The new civil action shall be against the following defendants: Collins, Williams, Neece, Taylor, J. Adams, Kegley, Rosch, and White.

8. The Clerk is DIRECTED to conditionally file a copy of Carter's complaint (Dkt. Nos. 1, 11) in a new and separate civil action that shall include only Claim 23, which asserts that defendant Massengill made statements in March 2022 that subjected Carter to a substantial risk of being seriously harmed by other inmates.  This new action shall proceed against Massengill.

9. In each of the four new civil actions, the Clerk also shall file a copy of this memorandum opinion and order as an attachment to the complaint.

10. In each of the four new civil actions, the complaint shall be conditionally filed only and a separate conditional filing order shall be entered in each.  Consistent with those orders, Carter will be required to either prepay the entire filing fee or execute the proper financial documents to seek leave to proceed *in forma pauperis* if he intends to continue to pursue the claim(s) presented in that action.  Alternatively, he may notify the court that he wishes to voluntarily dismiss any particular action.

11. Plaintiff's motions (Dkt. Nos. 46, 47) are DENIED.

The Clerk is DIRECTED to provide a copy of this memorandum opinion and order to Carter, along with a copy of the docket sheet in each case.

Entered: March 28, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge